IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

STEVEN MCGOWAN,                    )
                                   )     Case No: 1:12-CV-75
v.                                 )     MATTICE/CARTER
                                   )
MICHAEL J. ASTRUE,                 )
        Commissioner of Social Security  )


## REPORT AND RECOMMENDATION

This action was instituted pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking

judicial review of the final decision of the Commissioner denying the plaintiff a period of

disability, disability insurance benefits, and supplemental security income under Title II and Title

XVI of the Social Security Act, 42 U.S.C. §§ 416(I), 423, and 1382.   This matter was referred

to the undersigned pursuant to 28 U.S.C. § 636(b) and Rule 72(b) of the Federal Rules of Civil

Procedure for a Report and Recommendation regarding the disposition of the plaintiff's Motion

for Judgment on the Pleadings (Doc. 10) and defendant's Motion for Summary Judgment (Doc.

12).

For the reasons stated herein, I **RECOMMEND** that the Commissioner's decision be

**REVERSED** and **REMANDED** pursuant to Sentence Four of 42 U.S.C. § 405(g).

### Plaintiff's Age, Education, and Past Work Experience

Plaintiff was 43 years old at the time of the ALJ's decision (Tr. 23, 108).   Plaintiff has an

eleventh grade education and has past work experience as a cleaner, laborer, machine packer, and

mail handler (Tr. 34, 22, 133, 137).

1

## Applications for Benefits

Plaintiff protectively applied for a period of disability, disability insurance benefits (DIB) and Supplemental Security Income (SSI) on December 10, 2009, alleging he became disabled on May 15, 2008 (Tr. 108-16).   After his applications were denied at the initial and reconsideration levels (Tr. 54-57, 69-70), Plaintiff requested a hearing before an administrative law judge (ALJ) (Tr. 65).   Following a hearing on June 2, 2011 (Tr. 29-49), the ALJ issued a decision on July 28, 2011, finding Plaintiff not disabled from May 15, 2008, his alleged disability onset date, through the decision (Tr. 11-23).   The Appeals Council denied Plaintiff's request for review, finding no basis under its rules to review the ALJ's decision (Tr. 1-6).   The Commissioner's final decision is ripe for review under 42 U.S.C. §§ 405(g), 1383(c)(3).

## Standard of Review - Findings of the ALJ

Disability is defined as the inability to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than 12 months.   42 U.S.C. §423(d)(1)(A).   The burden of proof in a claim for Social Security benefits is upon the claimant to show disability. *Barnes v. Secretary, Health and Human Servs.*, 743 F.2d 448, 449 (6th Cir. 1984); *Allen v. Califano*, 613 F.2d 139, 145 (6th Cir. 1980); *Hephner v. Mathews*, 574 F.2d 359, 361 (6th Cir. 1978).   Once, however, the plaintiff makes a prima facie case that he/she cannot return to his/her former occupation, the burden shifts to the Commissioner to show that there is work in the national economy which he/she can perform considering his/her age, education and work experience.   *Richardson v. Secretary, Health and Human Servs.*, 735 F.2d 962, 964 (6th Cir. 1984); *Noe v. Weinberger*, 512 F.2d 588, 595 (6th Cir. 1975).

The standard of judicial review by this Court is whether the findings of the Commissioner are supported by substantial evidence. *Richardson v. Perales*, 402 U.S. 389, 28 L. Ed. 2d 842, 92 S. Ct. 1420 (1971); *Landsaw v. Secretary, Health and Human Servs.*, 803 F.2d 211, 213 (6th Cir. 1986). Even if there is evidence on the other side, if there is evidence to support the Commissioner's findings they must be affirmed. *Ross v. Richardson*, 440 F.2d 690, 691 (6th Cir. 1971). The Court may not reweigh the evidence and substitute its own judgment for that of the Commissioner merely because substantial evidence exists in the record to support a different conclusion. The Court may consider any evidence in the record, regardless of whether it has been cited by the ALJ. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). The Court of Appeals for the Sixth Circuit ("Sixth Circuit") has held that substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Garner*, 745 F.2d at 388 (citation omitted). The substantial evidence standard allows considerable latitude to administrative decision makers. It presupposes there is a zone of choice within which the decision makers can go either way, without interference by the courts. *Felisky v. Bowen*, 35 F.3d 1027 (6th Cir. 1994) (citing *Mullen v. Bowen*, 800 F.2d 535, 548 (6th Cir. 1986)); *Crisp v. Secretary, Health and Human Servs.*, 790 F.2d 450 n. 4 (6th Cir. 1986).

After consideration of the entire record, the ALJ made the following findings:

1.   The claimant meets the insured status requirements of the Social Security Act through March 31, 2011.

2.   The claimant has not engaged in substantial gainful activity since May 15, 2008, the alleged onset date (20 CFR 404.1571 *et seq*, and 416.971 *et seq*.).

3.   The claimant has the following severe impairments: degenerative disc disease of the lumbar and cervical spines (20 CFR 404.1520(c) and 416.920(c)).

4.   The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404,

Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5.   After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work activity as defined in 20 CFR 404.1567(b) and 416.967(b).

6.   The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7.   The claimant was born on xxxx, xx, 1967 and was 40 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8.   The claimant has a limited education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9.   Transferability of job skills is not material to the determination of disability because applying the Medical-Vocational Rules directly supports a finding of "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, 416.969(a)).

11.   The claimant has not been under a disability, as defined in the Social Security Act, from May 15, 2008, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 16-23).

## Issues Presented

Plaintiff raises the following issues:

I.      The ALJ erred in rejecting the opinion of Plaintiff's treating Nurse Practitioner.

II.     The ALJ erred in failing to fully develop the record and to recontact the consultative physician.

III.    The ALJ erred in giving the consultative examiner's opinion controlling weight when said opinion was not based on, and was in fact contrary to,

substantial evidence of record.

IV.    The Commissioner committed reversible error in failing to properly apply the Sixth Circuit pain standard.

V.    The ALJ erred in finding Plaintiff's depression to be non-severe.

VI.    There is new and material evidence that further supports Plaintiff's complaints of lower back pain.

## **Relevant Facts**

### **Medical Evidence**

Plaintiff alleges that he was experiencing back pain as far back as the year 2008. He alleges he did not have medical insurance and did not receive any treatment for almost one and one half years. He was treated on one occasion at Erlanger Medical Center Emergency Room on November 3, 2009 for complaints of back pain and elevated blood pressure. He was prescribed medications and released (Tr. 364-386).

At the request of the Social Security Administration, Plaintiff was examined by Dr. Emelito Pinga on February 22, 2010. Plaintiff complained of lower back and neck pain, as well as a history of asthma. Dr. Pinga noted Plaintiff used a walking cane in the office. He stated Plaintiff could walk without the cane, but both the straightway walk and the tandem walk was done at a slightly slowed pace without the cane. Dr. Pinga opined Plaintiff could sit for 6 hours out of an 8 hour workday, stand for 5 hours out of an 8 hour workday, and walk for 4 hours out of an 8 hour workday. However, he stated that there would be "limitation in any occasional lifting up weight of 20 pounds within an 8 hour workday cumulatively with rest period of fifteen minutes within 1 hour interval." (Tr. 262-272).

On March 31, 2010, Plaintiff began treatment at Memorial Westside Health Center, a local indigency care clinic. He complained of back pain and left wrist pain. An examination

revealed a positive straight leg raise and tenderness to palpation of the lumbar spine. Plaintiff was prescribed Ibuprofen and Flexeril for pain relief (Tr. 333-334). Plaintiff had an x-ray of the lumbar spine which revealed Degenerative Disc Disease at the L5-S1 level with a small osteophyte noted to be projecting from level L5. An x-ray of the cervical spine revealed narrowing at the C6-7 level (Tr. 325-326).

Plaintiff returned to see his primary care physician at Memorial Westside Health Center two months later, on May 24, 2010. He continued to complain of back pain, for which a Toradol injection was given. He was referred to physical therapy for his condition, but his back pain continued nonetheless (Tr. 331-332).

Plaintiff attended physical therapy from June 25, 2010 through July 8, 2010. The discharge summary from physical therapy indicated that Plaintiff's pain level never improved during his treatment, and that he was not compliant with the home exercise program that was prescribed (Tr. 470-479). (Plaintiff argues the reason for his "non-compliance" with the exercise program and failure for his pain to be reduced would later be documented by MRI findings, as noted below).

On July 22, 2010 Plaintiff presented to Memorial Hospital Emergency Room with complaints of severe back and neck pain. (Tr. 317-322). He returned to see his primary care physician at Memorial Westside Health Center the following day, using a cane for ambulation. It was noted that Plaintiff had pain in his lower back with any movement. It was recommended that Plaintiff have a MRI scan of his cervical and lumbar spine, which had finally been approved through the indigency care program (Tr. 328).

A MRI of Plaintiff's lumbar spine on July 26, 2010 revealed "heavy" degenerative changes which were centered around the L5/S1 level. A left central herniation was noted which

extended into the neuro foramina and compressed the left S1 nerve root.    There was also an extension of the herniation into the right neural foramina which touched the inferior surface of the right L5 nerve root as well as compressed the S1 nerve root on the right. (Tr. 313-316).

Plaintiff returned to his primary care physician on July 28, 2010.    He continued to complain of severe back pain and still required the use of a cane for ambulation.    Percocet was added to his medication regimen at that time. (Tr. 327).

On August 27, 2010 Plaintiff was admitted to Memorial Hospital secondary to a vasovagal syncope episode.    During this hospitalization, a CTA of the thoracic and abdominal aorta and pelvic arteries was performed.    This test revealed moderate degenerative changes at L5/S1 with vacuum disk and disk space narrowing with mild posterior listhesis of L5 on S1. Also of significance was a "subtle rounded mass at the periphery of the right kidney.    This is not a cyst."    (Tr. 488).

On September 3, 2010 Plaintiff was examined by Dr. Thomas Mullady, at the request of the Social Security Administration.    The examination was primarily limited to range of motion testing.    Dr. Mullady noted Plaintiff had decreased range of motion in the lumbar spine and that he stood with a 10 degree forward tilt.    Dr. Mullady stated Plaintiff needed to use his cane for balance and that he was unable to walk any distance without the cane because of severe back pain. (Tr. 352-53).

Plaintiff's primary care physician noted in October 2010 that she was trying to get him established with Project Access (a group of specialists that treat indigent patients free of charge) for a referral to an orthopedic specialist.    (Tr. 406)    Plaintiff saw Dr. Humphrey Heywood, a Board Certified Orthopedist, on October 20, 2010.    Dr. Heywood noted that Plaintiff got up very slowly and that he walked slowly with a cane leaning slightly forward.    Dr. Heywood's

examination revealed decreased range of motion of the lumbar spine. Straight leg raise testing on the left caused leg pain and straight leg raise testing on the right increased Plaintiff's back pain. Dr. Heywood recommended that Plaintiff see a neurosurgeon for further evaluation. (Tr. 399-402)

Plaintiff continued to receive treatment at Memorial Westside Health Center. He complained to his physician in March 2011 that the Percocet was not helping his pain and that he was unable to sleep secondary to severe pain. He continued to walk with a cane and a limp, and physical examinations revealed a strong pain response when Plaintiff's lower back was palpated. (Tr. 408-412). By May 2011 Plaintiff reported that the numbness in his lower extremities was even worse. It was noted that he was uncomfortable on the examination table. In addition to continuing other medications, a Toradol injection was again given for temporary pain relief. (Tr. 413).

After Plaintiff's hearing before the Administrative Law Judge on June 2, 2011 the ALJ requested that Plaintiff be evaluated by another physician. Plaintiff was sent to Dr. Jeffrey A. Uzzle on June 30, 2011 for an evaluation. Dr. Uzzle's report clearly noted that no medical records were available for review. As a result of not having any medical records to review, and not having done any diagnostic testing himself, Dr. Uzzle diagnosed Plaintiff with Chronic Pain Disorder. Dr. Uzzle's evaluation did confirm Plaintiff 's treating practitioner's opinion was that there was decreased sensation in Plaintiff 's left lower extremity, as well as weakness in the left lower extremity (Tr. 454-456).

**Depression**

Plaintiff's severe pain has led to severe depression. As a result of the depression, Plaintiff initiated treatment at Johnson Mental Health Center in February 2010. He voiced

suicidal ideations and noted that he was socially isolating.   He was diagnosed with a Mood

Disorder and a GAF score of 45 was given.   Despite medications including Elavil and

Cymbalta, Plaintiff continued to complain of depression the following month. A mood disorder

was assessed (Tr. 279-287).   Plaintiff continued in treatment and continued to complain of

depression as well as suicidal ideations to his counselor at Johnson Mental Health Center.   His

Global Assessment of Functioning (GAF) score as of February 2011 remained at 45 (Tr.

432-453).

## The ALJ's Decision

The ALJ reviewed Plaintiff's claims using the sequential evaluation process under 20

C.F.R. §§ 404.1520, 416.920 (2012)[1] (Tr. 29-37).   At step one, the ALJ determined Plaintiff had

not engaged in substantial gainful activity since May 15, 2008, the alleged disability onset date

(Tr. 16, Finding No. 2).   At step two, the ALJ found Plaintiff had the following severe

impairments: degenerative disc disease of the lumbar and cervical spines (Tr. 160, Finding No. 3).

The ALJ also found several conditions non-severe: mental health difficulties, gastrointestinal

difficulties, dizziness and asthma (Tr. 17).   At step three, the ALJ determined Plaintiff did not

have an impairment or combination of impairments that met or medically equaled one of the listed

impairments in 20 C.F.R. pt. 404, subpt. P, app. 1 (Tr. 18, Finding No. 4).   After considering the

effects from all of Plaintiff's impairments, the ALJ determined Plaintiff had the RFC to perform

light work[2] (Tr. 18, Finding No. 5).

---

[1]   All citations to the Code of Federal Regulations (CFR) are to the 2012 revision unless otherwise
noted.

[2]   "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of
objects weighing up to 10 pounds.   Even though the weight lifted may be very little, a job is in this
category when it requires a good deal of walking or standing, or when it involves sitting most of

Based on that RFC, the ALJ determined at step four that Plaintiff could not perform his past relevant work (Tr. 22, Finding No. 6).  At step five, after considering the Plaintiff's age, education, work experience and RFC, the ALJ used the Medical-Vocational Guidelines (Grids) Rule 202.18 as a framework for decision making to find there was other work Plaintiff could do that was light and unskilled (Tr. 22).  <u>See</u> 20 C.F.R. pt. 404, subpt. P, app. 2, Rule 202.18.  As Plaintiff could perform other work existing in significant numbers in the national economy, the ALJ found Plaintiff had not been under a disability, as defined in the Social Security Act, from the alleged disability onset date, through the date of his decision (Tr. 23, Finding No. 11).

**<u>Analysis</u>**

For reasons that follow, I conclude the Commissioner's decision is not supported by substantial evidence and remand under sentence four is the appropriate remedy.  The first three issues raised by Plaintiff assert error in rejecting the opinion of Plaintiff's treating Nurse Practitioner, in fully developing the record and failing to recontact the consultative physician and error in giving the consultative examiner's opinion controlling weight when said opinion was not based on, and was in fact contrary to, subtantial evidence of record.

**I.        The rejection of the opinion of the nurse practitioner**

Plaintiff contends the ALJ erred in evaluating his RFC (Doc. 11, Plaintiff's Memorandum at 7-20).  Specifically, Plaintiff contests the ALJ's evaluation of the opinion from the nurse practitioner and the consultative examiner and the evaluation of Plaintiff's subjective complaints of pain and other symptoms.  The Commisioner argues the ALJ's findings are supported by

---

the time with some pushing and pulling of arm or leg controls."  20 C.F.R. §§ 404.1567(b), 416.967(b).

substantial evidence in the record. The ALJ found Plaintiff could perform a full range of light work (Tr. 18). In making this finding, the ALJ cited to treatment notes from the Westside Clinic (Tr. 405-29). In May 2011, Plaintiff presented with complaints of lumbar pain and numbness in the lower extremities (Tr. 413). The ALJ noted, and the Commissioner now argues, that Diagnostic tests showed stable degenerative disc disease in Plaintiff's lumbar spine from March 2010 through May 2011 (Tr. 428). However, as Plaintiff argues, stable means only not changing. In fact the report noted severe narrowing of the L5-S1 disc space with vacuum phenomena was stable.

Plaintiff visited Margaret H. Greene, a nurse practitioner, on numerous occasions at the Memorial Westside Clinic ("Westside") (Tr. 327-34, 405-08). The ALJ considered Ms. Greene's evaluations and her opinion (Tr. 16-21). The treating source prescribed anti-inflammatory and pain medications, as well as physical therapy (Tr. 328). In May 2010, Ms. Greene indicated Plaintiff had a normal gait and normal range of motion for his musculoskeletal system (Tr. 331). Sometimes Plaintiff's symptoms would vary, for instance in June 2010 Plaintiff returned to Westside and reported that his back was better with physical therapy (Tr. 329). In July 2010, Ms. Greene documented Plaintiff's continued complaints (Tr. 327). The Comissioner argues the treatment notes generally reflect Plaintiff's subjective complaints and otherwise do not document severe limitations, but a July 26, 2010 MRI of the lumbar spine revealed that T12 through S1 demonstrated heavy degenerative changes centered at L5-S1 level and there was evidence of a left central herniation extending into the neuroforamina which was compressing the left S1 root. The L5 root appeared to exit above this defect (Tr. 315). In August 2010, Ms. Greene assessed Plaintiff with severe lumbar pain and opined that he was limited to lifting no more than five pounds and was unreliable in attending a full work week, a disabling assessment (Tr. 21, 348-51). The ALJ noted

that although Ms. Greene's evaluations could provide helpful information, her opinion was given only little weight because a nurse practitioner is not an acceptable medical source and her opinion was not supported by her own notes or the other evidence in the record (Tr. 21).

The Comissioner argues the ALJ properly considered Ms. Greene's opinion (Tr. 21), but afforded it only little weight and complied with the regulations regarding the evaluation of this opinion.  See  20 C.F.R. §§ 404.1513(a), (d)(1), 404.1527, 416.913(a), (d)(1), 404.927.[3]  Nurse practitioners are not considered acceptable medical sources under the regulations.  See 20 C.F.R. §§ 404.1513(a), (d)(1), 416.913(a), (d)(1).  Ms. Greene was not an acceptable medical source. See 20 C.F.R. §§ 404.1513(a), (d)(1), 416.913(a), (d)(1).  However, even though Social Security Ruling (SSR) 06-3p, 2006 WL 2263437 (S.S.A. 2006) specifically notes that only acceptable medical sources may be considered treating sources, whose opinions may be entitled to controlling weight, such sources may be relied on to assess the severity of impairments.

SSR 06-03p 2006 /WL 2329939 (S.S.A.) provide the following guidance in the use of such opinions:

> In addition to evidence from "acceptable medical sources," we may use evidence from "other sources," as defined in 20 CFR 404.1513(d) and 416.913(d), to show the severity of the individual's impairment(s) and how it affects the individual's ability to function. These sources include, but are not limited to:
> • Medical sources who are not "acceptable medical sources," such as nurse practitioners, physician assistants, licensed clinical social workers….

> These regulations provide specific criteria for evaluating medical opinions from "acceptable medical sources"; however, they do not explicitly address how to consider relevant opinions and other evidence from "other sources" listed in 20 CFR 404.1513(d) and 416.913(d). With the growth of managed health care in recent years and the emphasis on containing medical costs, medical sources who are not "acceptable medical sources," such as nurse practitioners, physician

---

[3]  20 C.F.R. §§ 404.1527, 416.927 changed with the 2012 version of the regulations.  The change affected the numbering of the sections, but does not affect the citation in this circumstance.

assistants, and licensed clinical social workers, have increasingly assumed a greater percentage of the treatment and evaluation functions previously handled primarily by physicians and psychologists. Opinions from these medical sources, who are not technically deemed "acceptable medical sources" under our rules, are important and should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file.

SSR 06-03p provides that opinions from 'non-medical sources' can be used to show the severity of a claimant's impairments and how it affects his/her ability to work. The Ruling further explains that:

> However, depending on the particular facts in a case, and after applying the factors for weighing opinion evidence, an opinion from a medical source who is not an "acceptable medical source" may outweigh the opinion of an "acceptable medical source," including the medical opinion of a treating source. For example, it may be appropriate to give more weight to the opinion of a medical source who is not an "acceptable medical source" if he or she has seen the individual more often than the treating source and has provided better supporting evidence and a better explanation for his or her opinion. Giving more weight to the opinion from a medical source who is not an "acceptable medical source" than to the opinion from a treating source does not conflict with the treating source rules in 20 C.F.R. §404.1527(d)(2) and 416.927(d)(2) and <u>SSR</u> 96-2p.

The nurse practitioner in this case has examined Plaintiff more than any other physician, has reviewed numerous x-rays and MRI reports, and has referred Plaintiff to specialists and reviewed the specialists' recommendations. As will be set out below, most of the other physicians evaluating this case had no access to the July 26, 2012 MRI.   I agree with the Plaintiff, under these circumstances, that she was in a better position to evaluate Plaintiff's work related limitations than most of the other health care providers.   Her opinion at Tr. 348-351, which clearly supports a finding that Plaintiff is not capable of performing even sedentary work on a sustained basis, appears to be based on more objective medical evidence of record, than was available to the other physicians.

**II and III.  The failure to fully develop the record and error in giving the consultative examiner controlling weight**

In Plaintiff's administrative hearing the ALJ noted that he would send Plaintiff to a neurologist for further evaluation (Tr. 47-48).   Plaintiff argues, the consultative examiner (a Physical Medicine & Rehabilitation physician and NOT a neurologist[4]) did not receive any records for review prior to, or after, examining Plaintiff.   The Comissioner responds that Dr. Uzzle was qualified under the regulations to perform the consultative examination and that there was no harm in Dr. Uzzle not having previous medical records in performing the evaluation (Doc 13, Defendant's Brief, p 10-11).   Plaintiff also points out that upon reviewing the consultative examiner's report (Tr. 454-456), counsel for Plaintiff sent a letter to the ALJ noting that the consultative examiner had not been provided with any medical records for review.   Counsel specifically requested that the examiner be forwarded the MRI report found on pages 313-316 of this Record for review and for further commenting by the examiner as to whether or not his assessed limitations would change.   Plaintiff's counsel also requested that additional records from Dr. Humphrey Heywood (Tr. 398-402), as well as treatment notes from Memorial Westside Clinic (Tr. 327-342 and Tr. 403-429) also be forwarded to the examiner for review (Letter to ALJ – Tr. 219-220).   Despite the request made to the ALJ post hearing and evaluation, the ALJ did not recontact the consultative examiner or send any records for review nor did he mention in his decision the request that this information be provided to the consultative examiner.

HALLEX (Hearings, Appeals, and Litigation Law Manual) I-2-5-20 provides that the ALJ should send a medical exhibits folder which contains evidence relating to the type of examination ordered with instructions for the State agency to send the folder to the consultative examiner for

---

4  Tenn. Dept. of Health:    Licensure verification – http://health.state.tn.us/licensure

review.   There is no indication that the ALJ provided the State agency with the records to send to the examiner.   The medical records, especially the MRI report documenting nerve root compression from a herniated disc in the lower back was certainly "relevant and related" to the type of examination that the judge requested.

In accordance with 20 C.F.R. §404.1519p, a consultative examiner's report is to be reviewed to see if the report is consistent "with the other information available to us within the specialty of the examination requested."   The report is also to be reviewed to determine if it provides evidence which serves as "an adequate basis for decision making in terms of the impairment it assesses."   20 C.F.R. §404.1519p also directs that   if the consultative examiner's report is inadequate or incomplete, "we will contact the medical source who performed the consultative examination, give an explanation of our evidentiary needs, and ask the medical source furnish the missing information or prepare a revised report."

Additionally, 20 C.F.R. §1512(e) provides that the Commissioner must seek additional evidence or clarification from a medical source when the report from a medical source contains a conflict or ambiguity that must be resolved, the report does not contain all of the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques.

As Plaintiff argues, without a review of the MRI findings, or the findings of Plaintiff's treating physicians on multiple occasions, the examiner could only opine Plaintiff had "Chronic Pain Syndrome."   The medical records document that Plaintiff   has extensive degenerative disc disease in his lower back with MRI findings documenting a herniated disc as well as nerve root compression.   Treatment notes from his treating physicians document weakness and numbness in Plaintiff's lower extremities.   The consultative examiner, unfortunately, did not have any of these

medical records to review. Without further testing or a review of the medical evidence, the examiner's diagnosis of Plaintiff's condition does not provide "an adequate basis for a decision."

I conclude under the specific facts of this case that the ALJ should have provided these medical records to the consultative examiner. Dr. Uzzle begins his report with the words, "This is a neurological exam. There are no medical records available for review from the Tennessee DDS." (Tr. 455). Although Dr. Uzzle finds normal muscle tone and no atrophy, he notes complaints of neck pain and limited range of motion of the dorsolumbar spine with low back pain. He noted a lot of pain behaviors, but found full range of motion in the knees and lower extremities except for lower back pain causing some guarding and limitation in both hips. He assessed Chronic pain disorder. Dr. Uzzle ends his report with a recommendation that the Tennessee DDS obtain Plaintiff's records from where he was hospitalized and medically evaluated to see what his diagnostic tests showed. He specificially states it is not clear if Plaintiff has had an MRI or CT myleogram to confirm the findings of the X-ray. Dr. Uzzle notes chronic neck and lower back pain in his assessment. Neurologically Plaintiff was overall intact except for some numbness and weakness in the left lower extremity (Tr. 454-56).

It is obvious that Dr. Uzzle wanted to have more information about Plaintiff's testing. I agree with Plaintiff that under these circumstances, the ALJ's conclusion (Tr. 21) that the consultative examiner's opinion (Dr. Uzzle) was afforded "great weight as his opinion is consistent with and supported by the evidence of the record as a whole" is not supported by substantial evidence in light of the MRI and the conflict between the opinion of the Nurse Practitioner who clearly had the longest treating relationship with plaintiff and the opinion of the consultative physician who lacked access to the diagnositic tests.

The Commissioner points to other evidence to support the findings of the ALJ. The ALJ considered Dr. Emelito Pinga's examination findings and gave some of the findings great weight (Tr. 20). Dr. Pinga performed a consultative evaluation of Plaintiff in February 2010, five months before the MRI findings revealing the heavy degenerative changes in L5-S1 with evidence of central herniation extending into the neuroforamina (Tr. 262-72, 315). Dr. Pinga observed that Plaintiff could sit six hours in an eight hour day, stand for five hours and walk for four hours, lifting twenty pounds occasionally (Tr. 266, 268). The ALJ gave this portion of Dr. Pinga's opinion great weight (Tr. 20). Dr. Pinga also opined that Plaintiff required a fifteen minute rest period every hour, but the ALJ found that limitation unsupported by the remainder of Dr. Pinga's evaluation notes (Tr. 20, 266). Dr. Pinga assessed Plaintiff with negative straight leg raises, the examination of his lumbar spine showed no spasms or tenderness and Plaintiff's sensation to pinprick and light touch were within normal limits in both the upper and lower extremities (Tr. 265). Plaintiff had 5/5 motor strength in her hands, arms, and legs (Tr. 265). Plaintiff also admitted he could walk without his homemade cane (Tr. 264).

After this evaluation, Plaintiff underwent several x-rays and MRIs of his back. In March 2010, the month after Dr. Pinga's evaluation, x-rays of Plaintiff's lumbar spine reflected degenerative disc disease, but x-rays of the cervical spine reflected only "some" space narrowing (Tr. 325, 326). The ALJ noted subsequent MRI studies from July 2010 of the cervical spine were negative for canal stenosis, cord or nerve root compress (Tr. 16, 313). The MRI of September 26, 2010 showed diffuse moderate sized herniation at L5-S1 with extension of right and left neuroforamina but it also showed compression of the left S1 root, which contradicts the finding of the ALJ (Tr. 315).

17

Plaintiff underwent a physical examination by internist Dr. Thomas Mullady in September 2010 (Tr. 352-53). During the physical examination, Dr. Mullady observed that Plaintiff had a decreased range of motion in the lumbar spine, but the MRI studies of the lumbar spine reflected no more than "moderate" disc herniation at L5-S1 (Tr. 353, 315). The ALJ found and the Commissioner argues Dr. Mullady offered no limitations or restrictions for Plaintiff (Tr. 17, 353). I note that Dr. Mullady referred to this as a "Limited Examination." In it Dr. Mullady reports the MRI scan showing moderate disc herniation at the L5-S1 level but fails to mention that T12 through S1 demonstrated heavy degenerative changes centered at L5-S1 with evidence of left central herniation extending into the neuroforamina with compression on the left S1 root. In fact, Dr. Mullady noted decreased range of motion of the lumbar spine with forward flexion to 45 degrees, extension to 5 degrees, right and left lateral flexion to 15 degrees. Straight leg raising permitted to 60 degrees bilaterally in the supine position with complaints of low back pain. He noted Plaintiff stood with a 10 degree forward tilt. Although he assessed no limp, Dr Mullady noted Plaintiff needs the cane for balance and was unable to walk any distance without the cane because of severe back pain (Tr. 352, 353).

In October 2010 Plaintiff visited Dr. Barry Heywood, an orthopedist (Tr. 399-402). Plaintiff complained of chronic pain in his lower back. The Comissioner argues the physical examination revealed no significant abnormalities. As the ALJ noted, Dr. Heywood diagnosed a disc disorder of the lumbar region and referred Plaintiff to a clinical neurologist (Tr. 400). Dr. Heywood did not offer any limitations or restrictions on Plaintiff and the evidence does not show any further neurological treatment (Doc. 13, Defendant's Brief, p. 8, Tr. 400).

In order to reach his RFC assessment the ALJ found part of Dr. Pinga's evaluation well supported but rejected the portions of the opinion that required rest breaks of 15 minutes out of

every hour.   He afforded little weight to Margaret Green the nurse practitioner because she was not an acceptable medical source even though she appears to have had the longest treating relationship with Plaintiff and was arguably the only person who was aware of the July 26, 2010 MRI report.   He afforded great weight to Dr. Uzzle, as consistent with the record as a whole even though Dr. Uzzle himself appeared to want to review Plaintiff's records. Dr. Uzzle specifically recommended that the medical records be provided.   I am going to take him up on that request, and recommend remand for that purpose to allow him to see the medical records which would have included the July 26, 2010 MRI finding.

Finally the ALJ considered the opinions of state agency physicians who opined Plaintiff could perform light work.   The ALJ afforded those State agency physicians great weight (Tr. 21). The first of those physicians was Dr. James B. Millis who provided his report on May 13, 2010. In reaching his conclusion that Plaintiff could perform light work, he noted the consultative examination did not confirm a neurological deficit.   The only report at that time was that of Dr. Pinga.   First, Dr. Millis did not have the MRI of July 26, 2010 because it did not yet exist and second in order to reach his conclusion he had to reject part of Dr. Pinga's medical assessment as it related to the need for assistive device, walking without use of a cane and his assessment of the need for rest breaks.   The second non examining state agency physician was Dr. Misra whose October 28, 2010 assessment appears to be the only medical opinion in the record other than the opinion of the Nurse Practitioner who had access to the MRI of July 26, 2010.   Unfortunately, the only reference to it is a passing one in which she states X-rays and MRI's of the cervical and lumbar spine do not show significant worsening of his physical condition.   Most of her report refers to the findings of Dr. Mullady.   She does not mention that portion of the MRI report noting

19

heavy degenerative changes centered at L5-S1 level with evidence of left central herniation extending into the neuroformina with compression of the left S1 nerve root.

In this case counsel for Plaintiff recognized the need to have the consulting doctors have access to the MRI reports and medical records. Dr. Uzzle specifically asked for these records. The other consulting and non-examining doctors did not appear to have the report. I conclude that in the particular facts of this case that the failure to have those reports leads to the conclusion that there is not substantial evidence to support the finding of the ALJ that Plaintiff can perform light work. He may or may not be able to perform light work. On remand these reports can be provided to the consultative and state agency physicians in this case. The only treating source who was aware of the entire record was the Nurse Practitioner who concluded Plaintiff was more restricted than the other consulting or reviewing physicians found. Her conclusion would undoubtedly result in Plaintiff being found disabled. It is a medical question, one for physicians, not Judges, so I recommend remand.

## IV.    The Commissioner committed reversible error in failing to properly apply the Sixth Circuit pain standard

Because I am recommending remand, I will not address this issue in detail. I conclude the assessment of whether the analysis of pain is supported by substantial evidence is tied to the finding that there is not substantial evidence to support the conclusion Plaintiff can perform light work. Once the physicians have the records of X-rays and MRI's, they can provide information about whether their assessments will change. The ALJ will then need to consider again about whether the Plaintiff's pain complaints are credible. There is simply no reason to address this issue if the case is remanded.

## V. The ALJ erred in finding Plaintiff's depression to be non-severe

I agree with the Commissioner that this does not require reversal because the ALJ did find one severe impairment.   Plaintiff contends the ALJ erred when he did not include depression among his severe impairments.   See Memorandum in Support of Reversal or Remand of the Commissioner's Decision (Pl.'s Br.) at 21-22.   Plaintiff's contention lacks merit because the ALJ found he had at least one severe impairment and then considered his severe and non-severe impairments at the subsequent steps in the evaluative process (Tr. 16-21), which is all the ALJ was required to do.

Because the ALJ found Plaintiff had some severe impairments, the specific impairments he listed in his step two finding are irrelevant.   See Maziarz v. Sec'y of Health & Human Servs., 837 F.2d 240, 244 (6th Cir. 1987) (noting failure to find particular impairment severe was not reversible error because ALJ found other severe impairments); see also McGlothin v. Comm'r of Soc. Sec., 299 Fed. App'x 516, 522 (6th Cir. 2008) (noting it was "legally irrelevant" that ALJ found some impairments not severe because ALJ found claimant had severe impairments and completed evaluation process).   After finding Plaintiff had a severe impairment, the ALJ demonstrated he considered Plaintiff's severe and non-severe impairments in the subsequent steps (Tr. 18-21).   The ALJ found at step three that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. pt. 404, subpt. P, app. 1 (Tr. 18, Finding No. 4).   In assessing Plaintiff's RFC, the ALJ noted he considered all of Plaintiff's symptoms (Tr. 18).   He considered Plaintiff's allegations of mental impairment and depression (Tr. 20).   The ALJ used Plaintiff's RFC determination at steps four and five to determine his ability to do other work (Tr. 22).   As the ALJ found Plaintiff had at least one severe impairment and then considered his severe and nonsevere impairments in the subsequent steps, it

became "legally irrelevant" that his depression was determined to be nonsevere. See McGlothin, 299 Fed. App'x at 522 (6th Cir. 2008) (unpublished disposition). Therefore, the ALJ did not err at step two of the sequential evaluation.

**VI.    New and material evidence alleged to give further support to Plaintiff's complaints of lower back pain**

Plaintiff argues for a remand under sentence six of 42 U.S.C. § 405(g) to present evidence related to a condition which resulted in a partial nephrectomy of Plaintiff's right kidney less than 3 months after the ALJ's decision (Doc. 11, Plaintiff's Memorandum p. 22, 23).   Plaintiff argues this condition gives further support to his allegations of pain.   Because I am recommending remand under sentence four in this case, I will not address whether this would meet the test for remand under sentence six as being new, material and requiring that good cause was shown for not presenting it at the earlier hearing.   On remand, Plaintiff may present this evidence for consideration by the ALJ.

Because I am recommending remand under sentence four, Plaintiff may present any evidence to the ALJ that may show any deterioration of Plaintiff's condition that relates to his ability to perform gainful activity.

## Conclusion

I am recommending remand under sentence four in this case. An award of benefits is proper only where all essential factual issues have been resolved, and proof of disability is overwhelming or proof of disability is strong and evidence to the contrary is lacking. *Faucher v. Secretary of Health and Human Services* , 17 F.3d 171, 176 (6th Cir. 1994).   In this case there is evidence on both sides and I cannot say that evidence of disability is overwhelming.

For the foregoing reasons, I conclude the Commissioner has not met the burden of showing Plaintiff is capable of performing jobs that exist in significant numbers in the national economy and that the Commissioner's decision is not supported by substantial evidence. Accordingly, I RECOMMEND that:

1.    Plaintiff's motion for judgment on the pleadings (Doc. 10) be GRANTED to the extent that it seeks remand under Sentence Four of 42 U.S.C. § 405(g).

2.    Defendant's motion for summary judgment (Doc. 12) be DENIED[5].

3.    The Commissioner's decision denying benefits be REVERSED and REMANDED pursuant to Sentence Four of 42 U.S.C. § 405(g) for action consistent with this Report and Recommendation.

S /William B. Mitchell Carter
UNITED STATES MAGISTRATE JUDGE

---

[5]Any objections to this Report and Recommendation must be served and filed within fourteen (14) days after service a copy of this recommended disposition on the objecting party. Such objections must conform to the requirements of Rule 72(b) of the Federal Rules of Civil Procedure.   Failure to file of objections within the time specified waives the right to appeal the District Court's order.   *Thomas v. Arn*, 474 U.S. 149, 88 L.Ed.2d 435, 106 S.Ct. 466 (1985). The district court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive and general.   *Mira v. Marshall*, 806 F.2d 636 (6th Cir. 1986).   Only specific objections are reserved for appellate review.   *Smith v. Detroit Federation of Teachers*, 829 F.2d 1370 (6th Cir. 1987).